DECISION
Before this Court is an appeal from a decision of the Zoning Board of Review of the City of Providence (Zoning Board) that has been brought by Appellants Geoff Thompson (Thompson), Paul Treanor (Treanor), Corliss Landing Condominium Association (Corliss Landing), and Fox Point Citizens Association (Fox Point) (collectively, the Appellants).[1] They contend that the Appellee Zoning Board both exceeded its authority, and arbitrarily and capriciously abused its discretion, when it granted a special use permit to the other Appellees, Eat-or-Out, Inc., d/b/a/ Hot Club (the Hot Club) and Thomas Bates (Bates) (collectively, the Applicant), allowing them to expand the bathroom and kitchen facilities at their business premises.[2] The Appellants further contend that the record did not provide the Zoning Board with substantial and reliable evidence to support its decision. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 Facts/Travel
The Applicant is the owner of two adjacent waterfront properties located in the City of Providence, and described as lots Nos. 12 and 13 on Tax Assessor's Plat No. 18. One property contains a brick structure known as the Hot Club. Hearing Transcript (Tr.) at 110. The other property consists of a parking lot that is used by patrons of the Hot Club and also contains 1800 square feet of outdoor seating for the Hot Club. Id. The properties are located on South Water Street in a waterfront W-2 zone. See Application at 1 and Tax Assessor's Plat No. 18.
On February 23, 2003, Bates, in his capacity as President of Eat-or-Out, Inc., submitted an application with Providence Zoning Board of Review. Application at 2. On the application form, the box next to the words "Variance — Use" was checked off. Id. The box next to the words, Special Use Permit, was left blank. Id.
The zoning provisions that Bates cited in the Application applied to special use permits. Id. Bates listed the property as lot 12 on Tax Assessor's Plat No. 18 and with an address of 575 South Water Street. Id. at 1. He described the legal use of the premises as a "Café/Lounge," and indicated that the property was 5797 sq. ft. with an existing building of "40' X 45' (approx)" in size.[3] Id. Bates requested permission to construct an addition to the building of "approx 29' X 20' (373 sq. ft[.])" for purposes of adding "additional bathroom and kitchen facilities." Id.
In the explanation section of the Application, the Bates stated:
 "We are seeking permission to expand our existing bathrooms and kitchen areas.
 These expansions are needed in order to bring bathrooms up to code and to add handicapped bath facilities, which requires more area.
 The proposed larger kitchen area will also allow us to bring this area into compliance with fire safety requirements. This proposal will not add to the existing capacity. This proposal will only add to the safety and convenience of our patrons." Id. at 2.
The Application stated that it was brought pursuant to Sections 303, 201, and 902 of the Zoning Ordinance of the City of Providence. Id. at 2.
On April 12, 2004, the Zoning Board posted a Notice of Public Hearing (Notice) scheduled to be conducted on April 28, 2004. In the Notice, the Zoning Board stated that the Applicant had "filed an application for permission to be relieved from Section(s) 201.5, 202.4, and 303-use code 58 in the proposed construction of a new 373 square foot addition to the existing café/lounge. . . ."[4] The Notice further stated that "[t]he applicant is requesting a special use permit in order to enlarge this existing legal non-conforming use within the W-2 waterfront district."
The hearing duly was conducted and, on May 5, 2004, the Zoning Board adopted a Resolution (Decision) approving the application. The Decision was recorded on May 7, 2004, and the Appellants timely appealed the decision to this Court.
 Standard of Review
The Superior Court's review of a zoning board decision is governed by § 45-24-69(d). Section § 45-24-69(d) provides:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, the trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings."DeStefano v. Zoning Board of Review of Warwick, 122 R.I. 241,245, 405 A.2d 1167, 1170 (1979). The term "substantial evidence" has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance."Lischio v. Zoning Bd. of Review of North Kingstown,818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. George ShermanSand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)). In conducting its review, the trial justice "may `not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact.'" Curran v. ChurchCommunity Housing Corp., 672 A.2d 453, 454 (R.I. 1996) (quoting G.L. 1956 § 45-24-69(d)). Thus, although the trial justice has "the authority to remand a case to the zoning board of review for further proceedings[,]" such remand "should be based upon a genuine defect in the proceedings in the first instance . . . or upon the fact that there is no record of the proceedings upon which a reviewing court may act." Roger Williams College v.Gallison, 572 A.2d 61, 62-63 (R.I. 1990).
The deferential standard of review that must be accorded a zoning board's decision "is contingent upon sufficient findings of fact by the zoning board." Kaveny v. Town of CumberlandZoning Bd. of Review, 875 A.2d 1, 7 (R.I. 2005). That is because, "a municipal board, when acting in a quasi-judicial capacity, must set forth in its decision findings of fact and reasons for the actions taken . . . so that zoning board decisions may be susceptible of judicial review." Id. (Internal citations and quotation marks excluded.) Furthermore, the finding of a zoning board must "be factual rather than conclusional, and the application of the legal principles must be something more than the recital of a litany." Id. (quoting Bernuth v. ZoningBoard of Review of New Shoreham, 770 A.2d 396, 401 (R.I. 2001). In cases where a zoning board "fails to state findings of fact, the [trial justice] will not search the record for supporting evidence or decide for itself what is proper in the circumstances." Kaveny, 875 A.2d at 7 (quoting Bernuth,770 A.2d at 401).
 The Preliminary Issue of Standing
The first issue that this Court must address is standing. The Applicant asserts that none of the Appellants has standing to challenge the Zoning Board's decision. Specifically, the Applicant maintains that the Appellants have failed to show that they were entitled to notice or that they were aggrieved parties within the meaning of G.L. 1956 § 45-24-31(4). This Court disagrees.
It has previously been held that "[a] party acquires standing either by suffering an injury in fact or as the beneficiary of express statutory authority granting standing. Tanner v. TownCouncil of Town of East Greenwich, 880 A.2d 784, 792 (R.I. 2005); see also Cortellesso v. Town of Smithfield ZoningBoard of Review, No. 2005-21-A., slip op. at 10 (R.I., filed Nov. 10, 2005) (holding that an "appeal must be taken by an aggrieved person who has an actual stake in the outcome of the controversy"). In cases that involve statutory standing, "the analysis consists of a straight statutory construction of the relevant statute to determine upon whom the Legislature conferred standing and whether the claimant in question falls in that category." Id. at 793 n. 6. Section 45-24-63 provides that "an appeal from any decision of an administrative officer or agency . . . may be taken to the zoning board of review by an aggrieved party." An aggrieved party is defined as
 "(i) Any person or persons or entity or entities who can demonstrate that their property will be injured by a decision of any officer or agency responsible for administering the zoning ordinance of a city or town; or
 (ii) Anyone requiring notice pursuant to this chapter." Sec. 45-24-31(4). Section 45-24-53(c)(2) requires that written notice be given "to all owners of real property whose property is located in or within not less than two hundred feet (200') of the perimeter of the area proposed for change. . . ."
The Applicant asserts that there is no evidence that any of the appellants own property within two hundred feet of the Hot Club, and that they have not demonstrated that they are aggrieved parties within the meaning of the statute. This assertion ignores the fact that Corliss Landing is located within two hundred feet of the Hot Club and that each owner in that development was entitled to notice.
The organization and operation of Corliss Landing Condominium is governed by chapter 36.1 of title 34, the Condominium Act. Pursuant to G.L. 1956 § 34-36.1-3.01, every condominium development is required to organize a unit owners' association "no later than the date the first unit in the condominium is conveyed to a purchaser." The statute further mandates that "[t]he membership of the association at all times shall consist exclusively of all the unit owners. . . ." Sec. 34-36.1-3.01.
The Condominium Act confers onto each unit owners' association certain enumerated powers, including the power to "[i]nstitute, defend, or intervene in litigation or administrative proceedings in its own name on behalf of itself or two (2) or more unit owners on matters affecting the condominium[.]" Sec.34-36.1-3.02(a)(4). It is undisputed that each individual condominium owner at Corliss Landing was entitled to notice of the Applicant's request for a zoning change because the development is located within the requisite statutory "perimeter of the area proposed for change. . . ." Sec. 45-24-53(c)(2). As the unit owners were entitled to notice and the Legislature expressly conferred upon condominium unit owners' associations the right to intervene in administrative proceedings, the Corliss Landing Owners' Association possesses standing to pursue the instant appeal.
Since Thompson and Treanor are board members of an association that is statutorily required to consist only of unit owners, they would have individual standing as property owners in that development even though they did not so allege in their complaint. Furthermore, even if they do not own property at Corliss Landing, Thompson may have a separate and distinct right to pursue this appeal in his individual capacity because the complaint asserted that he owns a parcel of land within two hundred feet of the Hot Club.
As at least one of the parties has standing, this Court need not address whether Fox Point also has standing to pursue the appeal. This Court will now address the merits of the appeal.
 Analysis
The Appellants contend that that the Decision was arbitrary, capricious and characterized by an abuse of discretion because it failed to address various inconsistencies and contradictions in both the record and the Application, and because the Zoning Board did not clarify the record regarding these issues. They further assert that the Zoning Board acted in excess of its authority by (a) failing to comply with the Providence Zoning Ordinance with respect to the issuance of a special use permit; (b) failing to comply with additional conditions for granting a special use permit in a waterfront zone; and, (c) improperly enlarging an existing non-conforming use. The Appellants also maintain that there was insufficient evidence in the record to support the Zoning Board's Decision.
A. The Application and Notice
The Appellants assert that the Application contained various inconsistencies and contradictions. To support this assertion, the Appellants note that the Application contained dimensional discrepancies for the proposed construction, that it sought a use variance rather than a special use permit, and that it failed to indicate that there were outstanding violations concerning the property. The Appellants contend that they brought these issues to the Zoning Board's attention, but that the Zoning Board failed to either clarify the record or address these issues in its Decision. Accordingly, the Appellants maintain that that the Decision was arbitrary, capricious and characterized by an abuse of discretion. This assertion appears to be in the nature of a challenge to the notice given to the Appellants.
Section 45-24-18 requires a zoning board of review to give public notice and written notice to all parties in interest. Sec.45-24-18; see also Ryan v. Zoning Bd. of Review of Town ofNew Shoreham, 656 A.2d 612, 615 (R.I. 1995). Compliance with the mandate of § 45-24-18 "is a prerequisite to the exercise of the jurisdiction of the zoning board of review." Ryan,656 A.2d at 615; see also Zeilstra v. Barrington Zoning Bd. of Review,417 A.2d 303, 307 (R.I. 1980). As previously stated, "[m]erely to advise of the date, time, and place of a proposed meeting without more, however, is a mere gesture, and will be of little significance unless in addition some advice is given of the purpose for which the meeting has been called." Carroll v.Zoning Bd. of Review of City of Providence, 104 R.I. 676, 679,248 A.2d 321, 323 (1968).
In order to meet that due process notice requirement, "the rule has developed that the notice, if it is to be adequate and sufficient, must in addition advise concerning the precise character of the relief sought and the specific property for which that relief is sought." Id.; see also Ryan,656 A.2d at 615 ("This jurisdictional requirement serves to afford those having an interest an opportunity to present facts that might shed light on the issue before the board."); Zeilstra,417 A.2d at 307 ("To be sufficient, the notice sent `must be reasonably calculated, in light of all the circumstances, to apprise the interested parties of the pendency of the action, of the precise character of the relief sought and of the particular property to be affected.'") (Internal citation omitted.) Although "action taken by a board that has not satisfied the notice requirements is a nullity[,]" Ryan, 656 A.2d at 615-16 (citingCorporation Service, Inc. v. Zoning Board of Review of EastGreenwich, 114 R.I. 178, 180, 330 A.2d 402, 404 (1975)), a determination of "whether a notice in a given case meets the tests will turn on its facts." Paquette v. Zoning Board ofReview of West Warwick, 118 R.I. 109, 111, 372 A.2d 973, 974
(1977).
However, the right to notice may be waived by a party who appears before a zoning board and presents his or her position at the hearing. See Ryan, 656 A.2d at 616 (observing that "appearance before the zoning board is proof that the unnotified party had the opportunity to present facts that would assist the zoning board in the performance of its duties, and therefore, such a party waives the right to object to any alleged deficiency of notice."); Zeilstra, 417 A.2d at 307 ("When a party appears before a zoning board of review and avails himself of the opportunity to present his position to the board, he thereby waives his right to object to any alleged deficiencies of notice.").
In the present case, the Appellants do not appear to be asserting that their due process rights were violated due to alleged deficiencies in the notice. If they were to take such a position, that argument would fail because, by appearing at the hearing, they waived their right to notice. Consequently, substantial procedural due process rights of the Appellants were not prejudiced. It appears to this Court that the Appellants are seemingly challenging the adequacy and sufficiency of the notice and are maintaining that the Zoning Board lacked jurisdiction due to the defects in the Application and Notice.
In Pascalides v. Zoning Bd. of Review of the City ofCranston, 97 R.I. 364, 197 A.2d 747 (1964), the Applicant, Rosedale Apartments, Inc., sought a special exception to build an apartment building on a piece of land consisting of two adjacent lots at 1180 Narragansett Boulevard. However, although the address was correctly identified as 1180 Narragansett Boulevard, and although one of the lots was correctly identified as lot 1912 on Assessor's Plat 2/3, the second lot was incorrectly described as lot 3998 instead of 3898 on the same Assessor's Plat. In reviewing the defective notice in Pascalides, the Rhode Island Supreme Court held that the defect was "a minor one and in the circumstances more in the nature of a harmless typographical error." Id. at 368, 197 A.2d at 750. Noting that the street address, as well as the incorrect lot number, was listed in the notice, the Court declared that "[t]he mistake in this further description was not of sufficient consequence to vitiate the otherwise clear and definite identification of the particular land upon which the applicant proposed to erect [the proposed] building. . . ." Id. at 368-69, 197 A.2d at 750. The Court later stated that "[t]he applicant was entitled to have its land treated as one lot for its purpose in seeking to obtain relief from the zoning board in order to realize the benefits of the use permitted in the district." Id. at 369, 197 A.2d at 751.
In the present case, the record reveals that the Applicant submitted a request for a variance pursuant to Sections 303, 201 and 902 of the Zoning Ordinance of the City of Providence, in order to expand existing bathroom and kitchen facilities by "29' X 20' (approx 373 sq. ft.)." However, a simple mathematical calculation reveals that 29' X 20' actually totals 580 square feet rather than the 373 square feet represented by the Application. The Application described the property as a café/lounge located on lot 12 on Tax Assessor's Plat No. 18 with an address of 575 South Water Street in Providence. The Application was silent on the question of outstanding violations.
The subsequent Notice for Public Hearing announced that, pursuant to Sections 201.5, 202.4, and 303-use code 58, the Applicant was requesting a special use permit to enlarge an "existing, legal non-conforming use." Specifically, it stated that the Applicant was proposing to construct "a new 373 square foot addition to the existing café/lounge to provide for the expansion of the existing restrooms and kitchen." The Notice also described the property as being on lot 12 on Tax Assessor's Plat No. 18, but listed the street as address 577 South Water Street instead of 575 South Water Street.
While there are multiple inconsistencies within the Application and between it and the Notice, this Court finds that there was substantial compliance with the notice requirements contained in § 45-24-18 warranting the Zoning Board's exercising jurisdiction over the matter. To begin with, as in Pascalides, the Applicant "was entitled to have its land treated as one lot for its purpose in seeking to obtain relief from the zoning board. . . ." Id.
Accordingly, while the Notice incorrectly describes the "café/lounge" as being located in the Hot Club's parking lot, rather than in the actual building the outdoor seating of which extends over the boundary into the parking lot (see Tr. at 110), this Court finds that the error was akin to the typographical error discussed in Pascalides. Furthermore, although the Application alternately described the proposed construction as "29' X 20'" and "approx 373 sq. ft.," this Court finds that the Notice clarified what the Zoning Board was intending to review when it described the construction as being "a new 373 square foot addition. . . ."
This Court further finds that although the Application appeared to be seeking a variance rather than a special use permit, the specific sections of the Zoning Ordinance that it cited as being applicable concern the enlargement of nonconforming uses and use regulations. It appears that the Zoning Board may have noticed this inconsistency and clarified the Notice to reflect the fact that the Applicant was requesting a special use permit. Consequently, although the application could have, and should have, been clearer, this Court concludes that the Notice was adequate under the circumstances. See Paquette,118 R.I. at 111, 372 A.2d at 974. Consequently, the Zoning Board had jurisdiction over the matter.
B. The Zoning Board's Decision
The Appellants maintain that the Zoning Board acted in excess of its authority by failing to comply with the provisions of the Providence Zoning Ordinance concerning the issuance of special use permits. Furthermore, they contend that the Zoning Board improperly enlarged an alleged legal nonconforming use, and that it did so based upon insufficient evidence in the record.
In its Decision, the Zoning Board stated that "the members of the Zoning Board of Review made an inspection of the above-described premises and also of the surrounding properties in the neighborhood." The Zoning Board then made the following findings:
 1. The applicant testified that the expansion of the restrooms is forced by the requirements of the Americans with Disabilities Act.
 2. The applicant has clearly shown that the hardship from which relief was sought is due to the unique characteristics of the subject property and is not due to the general characteristics of the surrounding neighborhood and further, the hardship is not due to a physical or economic disability of the applicant.
 3. The applicant has clearly shown that the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain.
 4. The applicant has clearly shown that the granting of the requested relief will not alter the general character of the surrounding area or impair the intent or purpose of the Zoning ordinance or the Providence Comprehensive Plan.
 5. The applicant has shown that that the relief requested is the least relief necessary in order for the hardship to be alleviated.
 6. The Board has considered the written recommendation of the Department of Planning and Development prior to making its decision.
Thereafter, the Zoning Board granted "the expansion of this legal non-conforming use and grants relief from Sections 201.5 and 202.4 for a special use permit pursuant to Section 303-use code 58 under Section 902 of the Zoning Ordinance. . . ."
The Appellants assert that the Zoning Board applied the incorrect standard for issuing a special use permit and, in particular, for issuing a special use permit in a waterfront district. This Court agrees.
A review of the Decision and the applicable zoning ordinances reveals that the Zoning Board failed to apply the proper standard in granting the Application. Rather than apply the special use permit standard, this Court finds that the Zoning Board applied the standard that is applicable to the granting of a variance.[5] Even if this were the correct standard, the Zoning Board failed to provide an appropriate record for judicial review because no findings of fact or conclusions of law were assembled on the record to support any type of decision to grant a variance. See Ridgewood Homeowners Ass'n v. Mignacca,813 A.2d 965, 977 (R.I. 2003) (observing that the record contained "no evidence whatsoever that `the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land' or that `the hardship that will be suffered by the owner of the subject property if the dimensional variance is not granted shall amount to more than a mere inconvenience, which shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property . . .' as required by the [applicable] Code. . . .") (Emphasis added). Likewise, in this case the Applicants presented insufficient evidence of hardship.
The only evidence of an alleged hardship in this case came from the testimony of an expert for the Applicant, who stated that with respect to the bathrooms: "They, the ADA, with the bathrooms, there's a possibility of violation." Tr. at 93 (emphasis added). On the issue of the expansion of the kitchen, he testified that "though it's been in existence for many years, it really doesn't comply with safety standards." Tr. at 89. He later testified:
 "The fire marshal always had some concerns with the old [kitchen], as well as the City of Providence. They did allow it anyway, they allowed it for the past 21 years, but it's time to upgrade. While they're doing the bathroom, let's do the rest. The kitchen was not a kitchen, per se, it was a grill." Tr. at 101 (emphasis added).
The expert also testified that "[t]he proposed plans are to bring both the areas [bathrooms and kitchen] up to speed, as far as handicap accessibility and the number of toilets for the facilities . . . and to bring the kitchen area or the cooking area into fire safety and building code requirements." The expert did not point to any provisions of either the ADA regulations or the fire safety and building code requirements to support his assertions.
While the Zoning Board did inspect the property, it made no findings in its Decision concerning that inspection. SeeSnyder v. Zoning Bd. of Town of Westerly, 98 R.I. 139,200 A.2d 222, 224 (1964) ("The bald statements that there will be drainage and sewerage disposal problems without disclosure of the observed conditions or land characteristics do not constitute the kind of probative evidence capable of sustaining the board's decision."). Consequently, assuming arguendo that the variance standard had been applicable, the Zoning Board's decision was made in excess of the Zoning Board's authority and was arbitrary and capricious and characterized by abuse of discretion. However, this Court is reversing the Decision on different grounds.
The applicable standard that the Zoning Board should have applied may be found in Section 902.4 of the Providence Zoning Ordinance. That provision governs the issuance of a special use permit. It provides:
 "To authorize, upon application, in specific cases, special-use permits pursuant to Section 303 and other applicable provisions of this Ordinance. The Board may impose such conditions regarding the proposed building, structure, use or otherwise, as it deems appropriate. To authorize a special use permit, the Board must first:
 A) Consider the written opinion from the Department of Planning and Development.
 B) Make and set down in writing specific findings of fact with evidence supporting them that demonstrate that:
 1. The proposed special use permit is set forth specifically in this Ordinance, and complies with any conditions set forth therein for the authorization of such special use permit.
 2. Granting the proposed special use permit will not substantially injure the use and enjoyment of nor significantly devalue neighboring property; and
 3. Granting the proposed special use permit will not be detrimental or injurious to the general health, or welfare of the community." Section 902.4 of the Providence Zoning Ordinance.
Furthermore, because this property is located in a W2 waterfront zoning district, in addition to satisfying the standards set forth in Section 902.4, the applicant also was required to satisfy the standards set forth in Section 905.2 of the Providence Zoning Ordinance. Those requirements are:
 A) "The proposed project preserves, enhances or creates public access to the waterfront.
 B) The proposed project does not unnecessarily obstruct views or impede existing access to the waterfront.
 C) The proposed project promotes the most desirable use of the land and direction of building development to assure the maintenance and enhancement of the aesthetic aspects of scenic views.
 D) The proposed project does not impede the navigable waterway.
 E) A traffic study has been completed that establishes the existing Level of Service and demonstrates that the proposed development will not degrade or lower the Level of Service once the project is operational. If the study determines that the proposed development will lower the Level of Service, the applicant must develop an improvement plan that will maintain or improve the Level of Service. The applicant will be required to make the proposed improvements and to pay for these improvements." Section 905.2 of the Providence Zoning Ordinance.
This Court finds that the Zoning Board applied the incorrect standard when it granted the special use permit. See
45-24-57(v) (requiring zoning ordinances to provide zoning boards with the power "[t]o authorize, upon application, in specific cases, special-use permits, pursuant to § 45-24-42, where the zoning board of review is designated as a permit authority for special-use permits); see also Section 905.2(E) of the Providence Zoning Ordinance (requiring a traffic study for special use permits in W2 waterfront zoning districts). Furthermore, it failed to make the requisite findings for the issuance of such a permit. Specifically, there were absolutely no findings concerning the effect on the neighborhood properties or community. Also, while there was some evidence in the record concerning how the proposed construction would not obstruct access to, or views of, the water, no traffic study whatsoever was conducted as required by the Section 905.2 of the Providence Zoning Ordinance.
Given that there was a complete absence of the required traffic study upon which the Zoning Board should have made findings, this Court is unable to remand the matter for further proceedings based upon that insufficient record and, instead, must reverse the Decision. See Roger Williams College v. Gallison,572 A.2d 61, 62 (R.I. 1990) (holding that the authority to remand "should not be exercised in such circumstances as to allow remonstrants another opportunity to present a case when the evidence presented initially is inadequate."). Additionally, because of the lack of a traffic study, coupled with the fact that the notice, application and record are replete with inconsistencies, the Applicants did not meet their burden of relief.[6] Indeed, considering the inconsistencies in this case, it is not inconceivable that the Zoning Board became confused and applied the incorrect standard as a result of its confusion.
 Conclusion
After a review of the entire record, this Court finds that the Zoning Board's granting of the special use permit was unsupported by the reliable, probative, and substantial evidence, was arbitrary and capricious, and was in violation of ordinance provisions. The Zoning Board's decision also was affected by error of law and was characterized by an abuse of discretion. Substantial rights of the Appellant have been prejudiced. Accordingly, this Court reverses the Zoning Board's decision.
Counsel shall submit an appropriate order consistent with this opinion.
[1] Geoff Thompson and Paul Treanor submitted this appeal in their individual capacities, as well as in their official capacities as board members of the Corliss Landing Condominium Association and as ordinary members of the Fox Point Citizens Association.
[2] As a preliminary matter, it appears from the record that the Chairperson of the Zoning Board actually sold the property at issue to the Applicant in 1984. While there is no evidence that anyone objected to her participation, due to the apparent conflict of interest, this Court suggests that in the future, the better course of action in such instances would be to offer to recuse before the hearing commences.
[3] These figures represent approximately 1800 square feet of structure.
[4] Section 201.5 of the Zoning Ordinance of the City of Providence concerns the addition or enlargement of a nonconforming use. It provides:
 "A. building or structure containing a nonconforming use shall not be added to or enlarged in any manner, including any addition or enlargement of floor area or volume, unless the use contained within such building or structure, including such addition and enlargement, is made to conform to the use regulations of the zone in which it is located." Section 201.5.
Section 202.4 concerns the addition or enlargement of a building or structure that is nonconforming by dimension. It provides:
 "A. building or structure nonconforming by dimension shall not be added to or enlarged in any manner, unless such addition or enlargement conforms to all of the dimensional regulations of the Zone in which the building or structure is located." Section 202.4.
Section 303-use code 58 involves use regulations for "Eating and/or Drinking Establishments with Entertainment." It requires special use permits for designated W2 waterfront zones.
[5] Section 902.3 of the Providence Zoning Ordinance, entitled Variances, provides:
 "To authorize, upon application, in specific cases of hardship, variances in the application of the terms of this zoning ordinance, as provided below:
 A) In granting a variance, the Board shall require that evidence to the satisfaction of the following standards be entered into the record of the proceedings:
 1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant;
 2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain,
 3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of this Ordinance or the Comprehensive Plan; and
 4) That the relief to be granted is the least relief necessary.
 B) The Board shall, in addition to the above standards, require that evidence be entered into the record of the proceedings showing that:
 1) in granting a use variance the subject land or structure cannot yield any beneficial use if it is required to conform to the provisions of this Ordinance. Nonconforming use of neighboring land or structures in the same zone or district and permitted use of lands or structures in an adjacent zone or district shall not be considered in granting a use variance, and
 2) in granting a dimensional variance, that the hardship that will be suffered by the owner of the subject property if the dimensional variance is not granted shall amount to more than a mere inconvenience, which shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted shall not be grounds for relief."
 C) In addition to the above, the Board shall consider the written opinion of the Department of Planning and Development prior to making a decision on a variance petition."
[6] This Court feels compelled to observe that although the Zoning Board found there existed a legal nonconforming use, this Court possesses concerns about whether the current use of property is, in fact, a legal nonconforming use, and whether Section 303-use code 58, entitled Eating and/or Drinking Establishments, with Entertainment, even is applicable to the property. It is not entirely clear from the record for what use the property actually is being employed.